RADCLIFFE BALDWIN, Respondent, *v.* THE SULLIVAN TIMBER COMPANY, Appellant.

Defendant chartered a steamer to carry a cargo of lumber. The charter party provided that the vessel was to be loaded afloat ; the charterer to bring the lumber alongside and load and stow it on the vessel and supply the dogs and chains necessary for handling it, the vessel simply to furnish steam if required to operate the steam winches ; the cargo "to be delivered alongside at merchant's risk and expense, and to be received by the master and secured with the ship's dogs and chains when so delivered, and to be then at ship's risk," the charterer's responsibility to cease as soon as the lumber is shipped and bill of lading signed. It was also provided that if the cargo should "not be delivered to vessel," within the time specified, demurrage at a specified rate should be allowed. In an action to recover demurrage it appeared that there was no delay in bringing the cargo alongside, but only in loading and stowing it. Defendant claimed that the delivery, a delay in which, under the charter party, authorized a charge for demurrage, was simply delivery alongside and did not include loading and stowing. *Held,* untenable ; that the delivery referred to was the complete and final delivery to the vessel, and this did not occur until the lumber was loaded and stowed and so passed out of the custody and control of the charterer.

After demurrage begins to run, under and pursuant to the terms of a charter party, Sundays are not to be deducted.

(Argued April 11, 1894; decided April 24, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 21, 1892, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This action was brought by plaintiff, as assignee of the Neptune Steam Navigation Company, to recover damages for an alleged breach of a charter party made between it as owners of the steamship "Albans" and defendant. On the 6th of April, 1888, the agents of the owners and the defendant entered into a charter party agreement, by which the latter chartered the steamer named, for a voyage from the port of Pensacola, Florida, to a port in the United Kingdom or other destination as might be ordered on signing bills of lading.

Among other things it was agreed that the ship should proceed to Pensacola, there load (always afloat) from the charterer a full and complete cargo of sawn boards or deals, the charterer to do the stowing of the cargo, supply dogs and chains, furnish cargo as fast as required for loading, and only such as could go through the ship's hatches, and pay watermen. The cargo "to be delivered alongside at merchant's risk and expense, and to be received by the master and secured by the ship's dogs and chains; when so delivered to be then at the ship's risk.". The lay days were to commence the day after the vessel was ready to receive cargo in loading berth and written notice given of such readiness to charterer, "and should the cargo not be delivered to vessel at Pensacola within specified time, for each and every day over and above said lay days, charterers are to pay, day by day, the sum of eighteen pence sterling per net register ton demurrage; any detention through quarantine not to count in lay days." The charter party also contained the following provision: "The charterer's responsibility under this charter shall cease as soon as the cargo is shipped and bills of lading signed, provided the conditions called for in this charter have been fulfilled or provided for by bills of lading." The ship proceeded to Pensacola and loaded, but, the plaintiff claimed, was unnecessarily detained, and he demanded demurrage, or damages in the nature of demurrage, for such detention, in consequence of alleged default in stowing or furnishing cargo as fast as required for loading, and claimed also to recover the expense of towage incurred to enable the steamer to lie afloat, she having been directed by the defendant's agent to a loading berth where she grounded and from which it was necessary to remove her, and also money expended for water and for dogs and chains which the ship was obliged to pay for. In opposition to the claim for demurrage it was urged by the defendant that under the express terms of the charter party no liability exists; that its provisions in that regard are limited to delays occasioned by failure to deliver cargo alongside ship, and nothing being said in the contract concerning

delay in loading all claim therefor is excluded, and a motion for a non-suit was made on that and the further ground that there was no proof either of default in delivering as fast as possible to the vessel nor of damage for failure to load — the liability for the stipulated amount of demurrage being confined to the specific contingency of neglect to deliver cargo to the vessel. This motion was denied.

*L. Laflin Kellogg* for appellant. The plaintiff was not entitled to recover in this action, because the proof shows that there was no delay in delivering the cargo as provided for in the charter party within a reasonable time, but that the delay, if any, was caused by the failure to load the cargo after delivery, and this being a duty undertaken by the defendant jointly with the plaintiff, and the charter failing to provide for demurrage in such a case, the recovery cannot be sustained. (*The R. G. Wilson*, 4 Biss. 13; *Bark Edwin* v. *N. S. C. Co.*, 1 Cliff. 322; *Sandeman* v. *Scurr*, L. R. [2 Q. B.] 86.) But even if it should be held that the joint duty as to the loading, taken in connection with the express provision for delay in delivering only, does not preclude demurrage for delay in loading, the recovery in this action cannot be sustained, because the plaintiff has alleged a cause of action founded on the express contract made between the parties and has recovered on a cause of action sounding in tort. (*Fulton* v. *Blake*, 5 Biss. 375; Cooley on Torts [2d ed.], 162, 163; *Harris* v. *Jacobs*, L. R. [15 Q. B. Div.] 277; *Day* v. *Town of New Lots*, 107 N. Y. 148; *Romeyn* v. *Sickles*, 108 id. 650; *Wright* v. *Delafield*, 25 id. 270; *Beard* v. *Yates*, 2 Hun, 466.) It was error to charge that for the delays in loading under the terms of the charter party the demurrage is fixed at over $250 a day; and it was also error to refuse to charge that the damages fixed by the charter party were only intended to cover delays in transporting the cargo alongside, and not delay in loading or stowing after its arrival at the vessel. (*Cross* v. *Beard*, 26 N. Y. 85; *Scholl* v. *A. J. & S. Co.*, 101 id. 604.) It was error to refuse to instruct the jury

that, in calculating a reasonable time after the commencement of the lay days, the Sundays which intervened should be deducted. (*Lindsay* v. *Cusimano*, 12 Fed. Rep. 503; *The Oluf*, 19 id. 459.) The objections taken by the plaintiff to the interrogatories as to the custom in loading vessels at the port of Pensacola were improperly sustained. (*M. S. Bacon* v. *E. & W. T. Co.*, 3 Fed. Rep. 344; *Bartlett* v. *A Cargo of Lumber*, 41 id. 890; *Gates* v. *Ryan*, 37 id. 154; *The Elida*, 31 id. 420; *Postlewaite* v. *Freeland*, L. R. [5 App. Cas.] 599.)

*William D. Guthrie* for respondent. There was an implied obligation or duty to load within a reasonable time. (*Cross* v. *Beard*, 26 N. Y. 87; *Melloy* v. *L. & D. C. Co.*, 37 Fed. Rep. 377.) There being no other evidence upon the subject in the case at bar, the rate of eight pence sterling per ton must be taken as the measure of the ship's damage for any unreasonable delay. (3 Suth. on Dam. [2d ed.] 2040; *Moorsom* v. *Bell*, 2 Camp. 616; *Douglas* v. *M. Ins. Co.*, 118 N. Y. 484, 486; *Adams* v. *Fitzpatrick*, 125 id. 124; *Ross* v. *Hardens*, 79 id. 84, 91; *Smith* v. *Velie*, 60 id. 106, 110; *Fells* v. *Vestvali*, 2 Keyes, 152, 153; *Evertsen* v. *Sawyer*, 2 Wend. 507, 512; *Abeel* v. *Radcliff*, 15 Johns. 505, 507; *Bradley* v. *Covel*, 4 Cow. 349, 350; *Dubois* v. *D. & H. C. Co.*, 4 Wend. 285, 291; *Farron* v. *Sherwood*, 17 N. Y. 227; *Jones* v. *Judd*, 4 id. 411; *N. M. Co.* v. *Stephens*, 127 id. 602.) The court properly ruled that although Sundays and holidays could properly be deducted and allowed within the period of a reasonable time for loading, yet after such reasonable time had expired, the ship was entitled to recover day by day, which includes Sundays and holidays. (3 Suth on Dam. 2040; *Hoffman* v. *N. Y. C. & H. R. R. R. Co.*, 87 N. Y. 25; *Massoth* v. *D. & H. C. Co.*, 64 id. 524.) The defense of duress and of estoppel is untenable. (*McPherson* v. *Cox*, 86 N. Y. 472; *Smith* v. *Holland*, 61 id. 635; *Riley* v. *Mayor, etc.*, 96 id. 331.) The court below, upon conflicting evidence submitted to the jury the question whether or not the period from April seventeenth to May seventh was more than a reasonable

time in which to load the vessel, and, if so, to what extent. The controversy was essentially an issue of fact for the jury ; the question thus raised was clearly within the province of the jury, and their verdict ought not to be disturbed. (*Nolan* v. *B., C. & N. R. R. Co.,* 87 N. Y. 63, 65 ; *Fairchild* v. *Fairchild,* 64 id. 471.) The competency of Elliot, as an expert, was within the discretion of the trial judge. (*Slocovitch* v. *O. M. Ins. Co.,* 108 N. Y. 56, 62.) The exception to the question : " Had you any knowledge of the rules and regulations of the custom house at Pensacola in regard to clearing vessels ? " was untenable. (U. S. R. S. § 4200.) The exception to the admissibility in evidence of the assignment was untenable. (*Stebbins* v. *Merritt,* 10 Cush. 27 ; *Academy* v. *McKechnie,* 19 Hun, 62 ; *I., etc., R. Co.* v. *Morganstern,* 103 Ill. 149.) The exception to the introduction of transactions and conversations with Mr. Tobin, as representing the defendant, is not well taken, for Tobin himself was afterwards examined as a witness by the defendant, and stated that he was at the time actually in the defendant's employ and representing it in this very transaction. (*Clark* v. *Dillon,* 97 N. Y. 370 ; *Stacy* v. *Graham,* 3 Duer, 444, 450 ; 14 N. Y. 492 ; *Bailey* v. *New World,* 2 Cal. 370 ; *Robertson* v. *French,* 4 East, 130, 137 ; *Bas* v. *Steele,* 3 Wash. C. C. 381, 390.) Exclusion of proof of custom to vary contract or contravene rule of law was proper. (*Robbins* v. *Fuller,* 24 N. Y. 570, 577 ; *Bradley* v. *Wheeler,* 44 id. 495, 500 ; *McMichael* v. *Kilmer,* 76 id. 36, 44 ; *Smith* v. *B. S. Bank,* 101 id. 58, 62 ; *Hopper* v. *Sage,* 112 id. 530 ; *Atkinson* v. *Truesdell,* 127 id. 230 ; *Barnard* v. *Kellogg,* 10 Wall. 383.)

Finch, J. We should affirm this judgment upon the opinion of the General Term, but for a criticism upon it which seems to require an answer. The whole present contention of the appellant turns upon the distinction asserted, that delivery by the shipper did not include the loading and stowing upon the vessel. Since there was no delay in bringing the timber alongside, but only in loading and stowing it, it is argued that there

was no basis for the demurrage which the charter party contemplated; that if demurrage became due it flowed from a neglect of duty which was outside of the contract, creating a cause of action in tort not pleaded, and to which the contract measure of damages did not apply. The learned counsel for the appellant insists that this view of the case was not met by the General Term, and that its decision was manifestly erroneous.

The effectual answer to this contention lies in a correct construction of the charter party, and a denial of the distinction attempted to be drawn. That instrument should have a reasonable rather than a technical construction, and its general purport should prevail over the narrowness of a single word. The vessel was to be loaded afloat. The charterer was to bring the timber alongside, and load and stow it upon the vessel. The latter was simply to furnish steam if required to operate the steam winches, but the charterer was to do the stowing of the cargo, which it is conceded includes the loading, and to supply the dogs and chains necessary for handling it. There is a further provision that the cargo is " to be delivered alongside at merchant's risk and expense, and to be received by the master and secured with the ship's dogs and chains when so delivered and to be then at ship's risk." This clause was needless if a mere delivery alongside was a complete delivery to the vessel, for after such complete delivery the liability of the ship would of course attach. The need of the provision lay in the fact that delivery alongside was not a complete delivery, because the merchant was still to remain in possession and control of his lumber for the purpose of loading and stowing it, and before that was accomplished the ship would assume no risk unless by force of a particular and specific provision, which, therefore, was added, and which put upon the vessel simply the duty of holding the timber safely alongside to enable the shipper to complete his delivery by loading and stowing. And so when the parties agreed in the terms of their contract that if the cargo should " not be delivered to vessel at Pensacola " within the specified time demur-

rage at a specified rate should be allowed, the delivery referred to is the complete and final delivery, not merely "alongside," but to the vessel, which did not occur until the lumber was loaded and stowed and so passed out of the custody and control of the merchant and into that of the ship. Wherever a delivery "alongside" alone is meant that qualifying word is used, and its omission when "delivery to the vessel at Pensacola" is prescribed in the clause relating to demurrage indicates that a complete delivery to the ship, ending the duty and control of the charterer, was what was meant.

This construction is supported by a reference to the situation and relations of the parties. The vessel might be delayed not merely by the delay of the merchant in bringing the lumber alongside, but also by his delay in his further contract duty of loading and stowing it. The purpose of demurrage was to compensate the ship for loss of time occasioned by the fault of the merchant, and it is not reasonable to suppose that delay in one respect only was the thought and purpose of the parties when delay in the other would accomplish the same injurious result. This construction of the contract, which was undoubtedly the understanding of the parties at the time of its execution, furnishes a sufficient answer to the principal contention of the appellant.

His exception to the refusal to charge that the three Sundays intervening between the 17th of April and the 7th of May should be deducted was not well taken. The request was too broad. The 17th of April was the end of the lay days and the 7th of May was the date of sailing. Sundays are not to be deducted after the demurrage begins to run. (*Lindsay* v. *Cusimano*, 12 Fed. Rep. 503; *The Oluf*, 19 id. 459.)

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.