SOUTHERLAND-INNES CO., Limited, v. THYNAS.

(Circuit Court of Appeals, Fifth Circuit. February 23, 1904.)

No. 1,263.

1. SHIPPING—BILLS OF LADING—EXCEPTIONS—PERILS OF SEA—DELIVERY OF CARGO.

Where a charter party exempted the ship from liability for loss by act of God, floods, or any extraordinary occurrence beyond control of either

¶1. Loss by perils of the sea, see note to The Dunbritton, 19 C. C. A. 465.

party, "and all and every other danger and accidents of the seas," of whatsoever nature and kind, during the voyage, the ship was not liable for loss of timber which had been delivered at the ship's side, and lost, by reason of a violent storm, notwithstanding the utmost care, diligence, and effort on the part of both the claimant and the ship's crew, under another provision of the charter party declaring that the cargo was to be delivered alongside, at merchant's risk and expense, and to be received by the master and secured by the ship's dogs and chains when so delivered, and to be then at the ship's risk.

Appeal from the District Court of the United States for the Northern District of Florida.

Jno. C. Avery, for appellant.

Benj. C. Tunison and Scott M. Loftin, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. The pitch-pine charter party which is the basis of this action provides, among other things, as follows:

"Cargo to be delivered alongside at merchant's risk and expense and to be received by the master and secured by the ship's dogs and chains when so delivered, and to be then at ship's risk."

This action is to recover for some 252 pieces of timber which were so delivered, received alongside the ship, but which on the night of January 23, 1903, were lost, through a violent storm of wind and rain in the port of Pensacola, notwithstanding the utmost care, diligence, and effort on the part of the claimant and the crew of said bark, and was by the force of the wind and rain and sea driven from alongside of said bark and scattered and lost. The case admits that the timber was so scattered and lost and it seems to be admitted by proctors on both sides that the violent storm of wind and rain which caused the loss was within the exceptions of ship's liability contained in the following provision of the charter party:

"The act of God, restraints of princes and rulers, public enemies, fire, floods, droughts, strikes or lockouts of seamen or shore laborers, whether partial or otherwise, and any consequence thereof, combinations of any extraordinary occurrences beyond control of either party, barratry of the master or crew, collisions, stranding, and all and every other danger and accidents of the seas, rivers and navigations of whatsoever nature and kind during the said voyage always mutually excepted."

The contention of the libelant below (appellant here) is that, notwithstanding the loss of the timber, within the provisions of the section just quoted, the ship is liable because of the alleged absolute contract, as in the first provision quoted; i. e., that, when timber was received alongside, it should be at ship's risk. The exception of liability quoted applies to all the ship's risks as to cargo—whether loaded or delivered alongside for loading. That it was intended to contract for a greater risk and liability as to cargo delivered alongside than for cargo received aboard, for which bills of lading are outstanding, is not to be presumed. We are clear that if the ship would not have been responsible for loss of the timber in question, under the circumstances conceded in the case, after delivery on board with a bill of lading outstanding, it cannot be held responsible under the contract of charter in this case for timber delivered alongside.

Although the express point was not in issue in Baldwin v. Sullivan Timber Co., 142 N. Y. 279, 36 N. E. 1060, the New York Court of Appeals, in construing a similar charter party, said:

"There is a further provision that the cargo is 'to be delivered alongside at merchant's risk and expense, and to be received by the master and secured with the ship's dogs and chains when so delivered and to be then at ship's risk.' This clause was needless if a mere delivery alongside was a complete delivery to the vessel, for after such complete delivery the liability of the vessel would, of course, attach. The need of the provision lay in the fact that delivery alongside was not a complete delivery, because the merchant was still to remain in possession and control of his lumber for the purpose of loading and stowing it, and before that was accomplished the ship would assume no risk, unless by force of a particular and specific provision, which therefore was added, and which put upon the vessel simply the duty of holding the timber safely alongside to enable the shipper to complete his delivery by loading and stowing."

But Nottebohn & Co. v. Richter, 18 Q. B. Div. 63, seems to be the only adjudicated case on the point; and there Lord Esher says, in regard to a risk assumed for cargo before loading:

"This is a charter party under which the ship is to sail from Barbadoes to Fecolutla, there to take a cargo on board and carry it to the United Kingdom. That is one voyage, and that is the chartered voyage, and whatever part of the charter party applies to the voyage applies to the whole of it. The exceptions in the charter party, so far as they can be applied, apply to the whole chartered voyage. The duty of the shipowner is to proceed to the place where the goods are, and to be ready to take them on board. If he is prevented from taking them on board by one of the excepted perils, he is excused from delivery. If this charter party had been in the ordinary form, it would have been the duty of the charterer to bring his goods alongside, so as to deliver them into the ship. The provisions of the charter party would not be applicable to these goods during the transit from the shore to the ship, because they are not at that time brought within the purview of the charter party. If it were not for this exceptional clause, the shipowner would have nothing to do with the goods during transit from the shore to the ship. Supposing that without such a clause the shipowner, not being under any obligation to carry from the shore to the ship, were to agree with the charterer that he would do so, that would be an independent contract, and would certainly not bring the goods within the charter party. In the present case it is put into the charter party that the shipowner will do it, but he does not undertake that he will take the goods at all risks, but at ship's risks. To my mind, it is clear that this means that he will take them at the same risk as the ship would be liable to when the goods were on board. The expression 'at ship's risk' cannot be strictly correct, because the ship has no risk; but I cannot doubt that the meaning is that the shipowner will take the goods, and, when once they are in his possession, treat them, as to risks, as if they were on board the ship. I think that view is supported by what was evidently in the mind of Willes, J., in Barker v. McAndrew, with regard to the word 'guarantied,' which occurred in the charter party in the expression 'guarantied for cargo in all this month,' which he construed to mean not an absolute guaranty, but a guaranty subject to the shipowner not being prevented by the excepted perils."

The Ira B. Ellems, 50 Fed. 936, 2 C. C. A. 85, is not in point.
The decree appealed from is affirmed.