LEHIGH VALLEY COAL CO. v. IONIA TRANSP. CO.

(Circuit Court of Appeals, Eighth Circuit. November 29, 1909.)

No. 2,999.

1. SHIPPING (§ 173*)—DEMURRAGE—DIVERSION OF VESSEL BY CARGO OWNER.
   Where a vessel is diverted from her original destination at the request of the consignor of the cargo, the latter becomes liable for all damages occasioned thereby.
   [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 570; Dec. Dig. § 173.*]

2. SHIPPING (§ 183*)—DEMURRAGE—AMOUNT.
   A charterer or cargo owner who wrongfully delays the discharge of a vessel is chargeable with demurrage for every day's delay between the time she should have been discharged and the time her discharge was actually completed, whether Sundays intervened or not.
   [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 593; Dec. Dig. § 183.*]

3. SHIPPING (§ 177*)—DEMURRAGE—DELAY IN DISCHARGING.
   Where, through the charterer's failure to discharge a vessel at her port of destination, she is obliged to proceed to another port, she cannot be held to have contracted with reference to a custom of such port that she shall await her turn to discharge, and for delay caused thereby the charterer is liable in demurrage.
   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 576–582; Dec. Dig. § 177.*
   Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

Appeal from the District Court of the United States for the District of Minnesota.

Suit in admiralty by the Ionia Transportation Company against the Lehigh Valley Coal Company. Decree for libelant, and respondent appeals. Affirmed.

L. K. Luse (Powell & Luse, on the brief), for appellant.

H. R. Spencer, for appellee.

Before HOOK and ADAMS, Circuit Judges, and CARLAND, District Judge.

ADAMS, Circuit Judge. This was an appeal from a decree in admiralty awarding the appellee $1,960.16 damages. The libel was filed by the Ionia Transportation Company, the owner of the steamer Ionia, against the Lehigh Valley Coal Company, consignor of a cargo of coal to recover demurrage for the detention of the vessel an unreasonable length of time for the discharge of its cargo.

The facts are these: On August 12, 1907, the Ionia left Buffalo car-

---

rying 2,357 tons of coal consigned by the appellant to M. Van Orden Company at the Port of Houghton, Mich. On August 18th the vessel arrived in due time and reported to Van Orden Company, who, for reasons unnecessary to be stated, were unable to accept or discharge the cargo. Correspondence followed between the master of the vessel and the consignor, in which the latter was advised that the cargo would be delivered at any accessible port, provided the shipper would pay all damages occasioned by lost time, additional outlay, and extra freight incident to the diversion. The consignor directed the master to sail to the Port of Superior and there discharge the cargo at its dock.

There is some controversy as to whether the consignor accepted the conditions upon which the vessel offered to make the diversion. It claims that the master agreed to transport the cargo from Houghton to Superior for a reasonable and fair rate of freight only and without any demurrage. The vessel proceeded to the Port of Superior, arriving there on August 21st, and forthwith reported its arrival and readiness to discharge its cargo to the appellant's agent at that place. There were two large steamers ahead of the Ionia for discharge, and the latter, according to the custom of the port, was thereby detained until August 28th before discharging its cargo. It is claimed by appellee that there was a detention of at least eight days more than there would have been if the vessel had been promptly discharged at Houghton, the original port of destination, for which it is entitled to recover demurrage. It is claimed by appellant that by reason of the special understanding had between it and appellee before the diversion was undertaken it became liable only for reasonable freight. It is also claimed by appellant that it was not liable for the detention, because it was occasioned by the discharge of other vessels, which, according to the custom of the port, had a prior right to be discharged, and that the appellee must be held to have undertaken the transportation in view of and subject to such possibility.

There are 24 actual assignments of error presenting the same question in about as many different ways; but there are not more than three real questions in the case. The proctors for the appellant candidly say in their brief:

"The contention of the appellant is that when the destination of the cargo was changed it was so changed upon the understanding that a reasonable and fair rate for the transportation of the coal should be paid and no more, while the contention of the appellee is that the appellant should pay all damages for loss which was sustained by reason of the consignee's refusal to receive the cargo."

Again they say:

"If the contention of the proctors for the appellant is sustained, the appellee is entitled to recover only reasonable compensation for the extra transportation of the coal from Houghton to Superior; the appellee taking its own chances as to the perils of the sea, the time of arrival at Superior, and the waiting under the custom of that port for the discharge of the vessel."

The substance of the controversy is, therefore, made to depend upon a narrow question of fact. In the effort to reach a correct conclusion of this issue, we have carefully scrutinized all the evidence, and are brought to the conclusion that the appellant's version of the matter is

not sustained. Instead of having an understanding or agreement that appellant's liability should be limited to the reasonable and fair freight for the extra transportation, we think it altogether probable that appellant accepted the master's proposition to deliver the coal at Superior on the terms of paying all damages which might accrue to the appellee on account of delay and lost time, besides the additional freight. But whether this be so or not, after finding that there was no agreement between the parties as claimed by appellant, the law fixes their rights and obligations. It is well settled that, when a diversion from the original destination is made at the request of the shipper, the latter becomes liable for any and all damages occasioned thereby. In the case of Pioneer Fuel Co. v. McBrier, 28 C.`C. A. 466, 84 Fed. 495, Mr. Justice Brewer, speaking for this court, said:

"The steamer contracted with the owners to take their coal and deliver it to the claimant at Duluth, free of handling. It knew what conveniences the claimant had for unloading. It knew the time which would reasonably be occupied in unloading at the claimant's dock, and with that knowledge it contracted for a certain price of carriage. It had a right to expect that the owners would see that arrangement was made with the claimant for receiving and unloading the cargo, and if they failed to make such arrangement, and there was consequently a longer detention than was originally necessary for unloading at claimant's dock, it was entitled to demurrage."

See, also, to the same effect, Cross v. Beard, 26 N. Y. 85; Fulton v. Blake, 3 Biss. 371, Fed. Cas. No. 5,153; The Dictator (D. C.) 30 Fed. 637; Donaldson v. McDowell, Fed. Cas. No. 3,985.

It results that appellee was entitled to some demurrage. The only question left is as to the amount. It is contended that the District Court erred in allowing damages for the vessel's delay over one Sunday which intervened while it was awaiting discharge. The home of the ship is on the sea, and it probably costs no less, after a voyage is once begun, to continue on than it would to ride at anchor. If the Ionia had been promptly discharged, she might the sooner have been chartered for some other voyage, and commenced earning additional freight. It has been held, and we think properly, that the consignor who wrongly occasions delays in discharging a vessel is chargeable with demurrage for every day's delay between the time discharge should have been completed and the time it was actually completed, whether Sundays intervened or not. Lindsay, Gracie & Co. v. Cusimano (C. C.) 12 Fed. 504; Baldwin v. Sullivan Timber Co., 142 N. Y. 279, 36 N. E. 1060.

It is lastly contended that the delay at the Port of Superior occasioned by the arrival and discharge of two other ships, which, according to the custom of the port, were first to be discharged, cannot be the subject of demurrage. This, we think, is untenable. It may be conceded that, if the original charter party had been for delivery at the Port of Superior, the custom of that port would have been within the contemplation of the parties, and they might be held by implication to have contracted in view of and subject to it. But such is not the present case. The agreement here was for delivery at the Port of Houghton. The owner of the vessel was willing to undertake the carriage for delivery at that port. Its other engagements doubtless per-

mitted it to do so profitably, while they might not have permitted it to undertake the carriage and delivery to a more distant port, attended possibly with more inconveniences and difficulties. Certain it is it never agreed to do so.

Appellant's breach of contract in failing to give the vessel dispatch at Houghton was the wrongful act which resulted in damages to appellee. That failure necessitated some other disposition of the cargo, and all delays incident thereto resulted proximately from the breach. In the absence of an understanding or agreement fixing the terms for the further transportation of the cargo, no implication arises that the vessel agreed to sustain the loss resulting from delays in the final discharge whether from the custom of the port where made, or otherwise. Cases supra.

The case of Empire Transportation Co. v. Philadelphia & R. Coal & Iron Co., 23 C. C. A. 564, 77 Fed. 919, 35 L. R. A. 623, relied upon by the proctors for appellant, has no pertinency to the peculiar facts of this case. The "custom of the port" there under consideration had relation to the reasonableness of the time the vessel took to make discharge of its cargo at the port of original destination; and, even there, it is said to afford no absolute rule, but to constitute one of the facts and circumstances determinative of the question at issue whether the discharge was accomplished within a reasonable time.

Some rulings on the admission of evidence and on other phases of the case are complained of by appellant; but, after a patient consideration of them all, nothing is discovered prejudicially affecting the rights of the appellant.

The decree is, accordingly, affirmed.