ULSTER BRICK CO. v. MURTHA & SCHMOHL CO.

(Supreme Court, Appellate Division, Second Department.   July 30, 1915.)

1. SHIPPING ⬤�longdash⟩177—DEMURRAGE—LIABILITY OF PURCHASER OF CARGO.

The purchase of a cargo of brick, without any bill of lading or assignment of the contract of carriage, required the purchaser to discharge without unreasonable delay, as well as to pay for any additional towage and wharfage caused by ordering shift in the discharging berth.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 576–582, 584; Dec. Dig. ⬤�longdash⟩177.]

2. SHIPPING ⬤�longdash⟩177—DEMURRAGE—DELAY IN DISCHARGE.

In view of Personal Property Law (Laws 1911, c. 571) § 132, declaring that, when a seller is ready to deliver and requires the buyer to accept, and the buyer does not do so within a reasonable time, he is liable to the seller for any loss occasioned by his refusal to take delivery, and for a reasonable charge for the custody of the goods, plaintiff, the seller of a cargo, in possession of a barge for delivery, might hold the buyer for any loss occasioned by his delay in taking delivery or in detaining the barge beyond a reasonable time for discharge.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 576–582, 584; Dec. Dig. ⬤�longdash⟩177.]

3. SHIPPING ⬤⟻⟩184—ACTION FOR DEMURRAGE—INSTRUCTIONS.

In an action by the seller of a brick cargo, in possession of a barge for its delivery, to recover for her detention beyond a reasonable time for her discharge, and for towage caused by a shift of her discharging berth, where it appeared that if defendant had not attempted to rescind the contract of purchase, and the discharge had gone on with ordinary dispatch, the cargo would have been out before January 1st, and where the answer, to excuse delay in taking the brick, pleaded that after the alleged repurchase there was severe cold weather, during which the brick froze to the deck, and where it appeared that the cargo was not out until March 12th, an instruction leaving the quality of the bricks, including their rejection and defendant's repurchase thereof, with the uncontroverted testimony as to the daily rate of unloading such a cargo, and the effect of a trade custom to take and pay for parts of such cargo by deliveries from the barge's rail, was as favorable to defendant as his pleadings and proofs warranted.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 596;  Dec. Dig. ⬤⟻⟩184.]

4. SHIPPING ⬤⟻⟩177—DEMURRAGE—RATE AND AMOUNT.

Once a vessel is on demurrage, the obligation to pay is continuous, regardless of weather or holidays thereafter, until the discharge is complete.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 576–582, 584; Dec. Dig. ⬤⟻⟩177.]

5. SHIPPING ⬤⟻⟩184—ACTION FOR DEMURRAGE—TIME.

In an action by the seller of a cargo of brick, in temporary possession of a barge for its delivery, to recover demurrage and the expense of towage, etc., proof of detention, with a market value for use of the barge, made out plaintiff's cause of action, and the commencement of action by service of summons and complaint was not premature, although plaintiff's payment of the hire of the barge and the expense of extra towage was not receipted for until five days thereafter, since, while the cause of action must arise before bringing suit, the evidence to sustain it need not then be complete.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 596;   Dec. Dig. ⬤⟻⟩184.]

⬤⟻⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Trial Term, Orange County.

Action by the Ulster Brick Company against the Murtha & Schmohl Company. From a judgment upon the verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Judgment and order affirmed.

See, also, 165 App. Div. 927, 149 N. Y. Supp. 1115.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

Frank Barker, of New York City, for appellant.

Graham Witschief, of Newburgh, for respondent.

PUTNAM, J.    [1, 2] Although this brick cargo was purchased without any bill of lading or assignment of the contract of carriage, by the act of purchase defendant undertook to unload without unreasonable delay, as well as to pay for any additional towage and wharfage caused by ordering the discharging berth to be shifted. Houge v. Woodruff (D. C.) 19 Fed. 136. As vendor of the cargo, plaintiff was entitled to hold the vendee for any loss occasioned by his delay in taking delivery of the goods. Personal Property Law (Laws of 1911, c. 571) § 132. Having a temporary possession of the brick barge, plaintiff could recover any damages for detaining the barge beyond a reasonable period for her discharge, since presumably he could otherwise employ the barge, or, if he chose, turn the barge back to its owner.

[3, 4] On November 17, 1913, defendant purchased this cargo. Up to January 1, 1914, weather conditions were favorable for discharging. But it was not till March 12th that the cargo was out. The question of the brick's quality, including its alleged rejection and defendant's repurchase of it in January, were left to the jury, with the controverted testimony as to the daily rate to unload such a cargo, as well as the effect of a trade custom for other dealers in brick to take and pay for portions of such cargoes, by delivery from the barge's rail.

Defendant urges that the court should have charged defendant's request that:

"It was incumbent upon the plaintiff to protect the brick from the weather while it was on the barge."

After remarking that there was no evidence on the subject, the learned court said:

"I suppose it was the plaintiff's business to exercise reasonable care for the protection of the brick until it was actually taken in charge of by the defendant. * * * I will leave it to the jury to say in this case, from all the facts and circumstances, who, if either of these parties, was responsible for any damage done to the brick while on the barge."

The answer had pleaded that after this alleged repurchase—that is, while the barge was at 133d street, Manhattanville—there was severe cold and freezing weather, when the brick, being uncovered, froze to the deck. This was set up to excuse delay in taking the brick at that time, and not as a counterclaim. But if defendant had not attempted to rescind the contract of purchase, and the discharge had gone on with ordinary dispatch, the cargo should have been all unladen before January 1st. After that, the vessel could be considered as on demur-

rage; and, once a vessel is on demurrage, the obligation to pay is continuous, regardless of weather or holidays thereafter, until the discharge is completed. Baldwin v. Sullivan Timber Co., 142 N. Y. 279, 285, 36 N. E. 1060. Hence the request to charge in the abstract, as to the duty to protect the cargo, was not applicable. The instruction as given was as·favorable to defendant as its pleadings and proofs warranted.

[5] The plaintiff proved payment of the hire of the barge at $5 a day, and $38 for extra towage in shifting the barge to three different unloading berths. The summons and complaint were served on March 31st, but this payment appears to have been receipted for on April 4th, five days after suit brought. The action, however, was not premature. Proof of detention, with a market value for use of such a craft, made out plaintiff's right of action. This receipted bill was evidence to protect defendant against a possible double liability to the barge owner. While the cause of action must arise before beginning suit, the evidence to sustain it need not then be complete. Gillies v. Manhattan Beach Improvement Co., 147 N. Y. 420, 42 N. E. 196. We cannot say that the weight of evidence is against the verdict, or that the damages found were excessive.

The judgment and order are therefore affirmed, with costs. All concur.